**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

FONTA WHIPPLE,

                Petitioner,         :    Case No. 1:14-cv-119

    - vs -                           District Judge Timothy S. Black
                                        Magistrate Judge Michael R. Merz

WARDEN, Southern Correctional Facility,

                Respondent.         :

## REPORT AND RECOMMENDATIONS

       This habeas corpus case is before the Court for decision on the merits.  Petitioner has filed the Petition (Doc. No. 1) and a Traverse (Doc. No. 12).  Respondent has filed an Answer/Return of Writ (Doc. No. 5).

       Whipple pleads the following nine Grounds for Relief:

       **Ground One**: The trial court violated Petitioner's 5th, 6th and 14th Amendment rights when it refused to sever multiple counts when the joinder impermissibly prejudiced Petitioner.

       **Supporting Facts:**  The trial court refused to sever two separate crimes that were unrelated and occurred on different days.

       **Ground Two**: The trial court violated Petitioner's 5th and 14th Amendment rights when it convicted him based on insufficient evidence.

       **Supporting Facts:** The State failed to produce sufficient evidence that Fonta Whipple committed the crimes for which he was convicted.

**Ground Three**: The trial court violated Petitioner's 5th and 14th Amendment rights when it permitted the prosecutor to improperly introduce prior inconsistent statements of its own witness.

**Supporting Facts:**  The State called Alicia Koth[sic] as a witness and then improperly offered her prior inconsistent statements.

**Ground Four:** The trial court violated Petitioner's 5th and 14th Amendment rights when it improperly excluded vital defense evidence.

**Supporting Facts:**  The trial court excluded defense evidence of police misconduct.

**Ground Five**:  The trial court violated Petitioner's 5th and 14th Amendment rights when it admitted evidence without authentication.

**Supporting Facts:** The trial court admitted unauthenticated videotapes alleged to be from security cameras at Thorton's Gas Station and Cracker Barrel restaurant.

**Ground Six:** The trial court violated Petitioner's 5th and 14th Amendment rights with [sic] it refused to declare a mistrial.

**Supporting Facts:** Defense moved for mistrial at least seven times, and the trial court denied all of the motions. The jury was poisoned by the multiple errors which deprives Petitioner of a fair trial.

**Ground Seven:** The trial court violated Petitioner's Double Jeopardy and 5th and 14th Amendment rights with [sic] it failed to merge two convictions.

**Supporting Facts**: The trial court failed to merge the Improper Discharge of a Firearm and Felonious Assault charges despite having the same evidentiary basis.

**Ground Eight**: Petitioner's 6th and 14th Amendment rights were violated when he was denied the effective assistance of trial counsel.

**Supporting Facts:** Trial counsel failed to timely object when the State improperly questioned Alicia Kloth. Furthermore, trial court [sic] failed to timely move for a separate trial from Petitioner's co-defendants. Petitioner was prejudiced by trial counsel's failures.

2

**Ground Nine**: The court of appeals violated Petitioner's 5th, 6th and 14th Amendment rights when it refused to allow Petitioner to be removed from the accelerated calendar.

**Supporting Facts:** The court of appeals forced petition [sic] to be restricted to a 15-page limit for his appeal brief with no reply when the matter being appealed included a 2,813 page transcript, 12 days of jury trial 3 co-defendants and the imposition of multiple life sentences without the possibility of parole.

(Petition, Doc. No. 1.)


**Procedural and Factual History**


Whipple was indicted by the Hamilton County Grand Jury in 2009 on three counts of felonious assault in violation of Ohio Revised Code § 2903.11(A)(2), with firearm specifications; one count of improperly discharging a firearm at or into a habitation or school safety zone in violation of Ohio Revised Code § 2923.161(A), with firearm specifications; two counts of having weapons while under disability in violation of Ohio Revised Code § 2923.13(A)(3); and two counts of aggravated murder in violation of Ohio Revised Code § 2903.01(A), with special felony specifications. (Return of Writ, Doc. 5-1, Ex. 1, Page ID 83.)

Following a jury trial, Whipple was found guilty of three counts of felonious assault, two counts of aggravated murder, two (2) counts of having weapons while under disability and one count of improperly discharging firearm at/into habitation. The jury also found him guilty of all number one specifications, but not guilty of the second specifications. The court sentenced Whipple to an aggregate sentence of nineteen years consecutive to two (2) life sentences without the eligibility of parole.

Whipple appealed to the Court of Appeals of Ohio, First Appellate District, Hamilton

County, raising nine assignments of error:

> 1. The presiding judge erred when it allowed the certification of nondisclosure of all lay witnesses.
>
> 2. The trial court erred to the prejudice of the Defendant-Appellant by not granting his motion to dismiss or alternatively, his motion for a mistrial.
>
> 3. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of murder, aggravated robbery, and having weapons while under disability, as those findings were not supported by sufficient evidence.
>
> 4. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of murder, aggravated robbery, and having weapons while under disability, as those findings were contrary to law.
>
> 5. The trial court erred to the prejudice of the Defendant-Appellant by overruling his Motion for Acquittal under Ohio Criminal Procedure Rule 29.
>
> 6. The trial court erred to the prejudice of the Defendant-Appellant by imposing a sentence that is an abuse of discretion.
>
> 7. The trial court erred to the prejudice of the Defendant-Appellant by allowing the alleged co-conspirator to testify.
>
> 8. The trial court erred to the prejudice of the Defendant-Appellant by allowing testimony related to a prior robbery.
>
> 9. The trial court erred to the prejudice of the Defendant-Appellant by allowing the prosecution to dismiss two black jurors.

(Return of Writ, Doc. 5-1, Ex. 9, Page ID 117.)

The Court of Appeals of Ohio set forth the facts of this case on direct appeal as

follows:

### The Matthews Drive Shooting

[*P3] The evidence adduced at trial reflects that in the early hours of March 4, 2009, Keeling and Stinson were celebrating a birthday with their friend Kyrie Maxberry at the Garage Bar in Sharonville, Ohio. They left the bar sometime after 2:00 a.m. for Keeling's and Stinson's home on Matthews Drive in nearby Lincoln Heights. As they approached Matthews Drive, they noticed Whipple driving a gray van. Clark was in the front passenger seat of the van, and Long was in the backseat. Keeling testified that he had felt concerned when he saw Whipple, Clark, and Long because of something that had occurred when he and the three men were at a local nightclub a few days earlier. Keeling did not elaborate on that incident.

[*P4] When Keeling, Stinson, and Maxberry reached Keeling's and Stinson's home, it appeared that Whipple had followed them. Moments after they hurried inside, bullets burst through the front walls of the home. Keeling was shot in the back and neck, Maxberry was shot in the face, and Stinson was nearly shot while ducking for cover. At the scene, police later recovered over two dozen casings shot from three high-caliber weapons.

[*P5] After a few days passed, Stinson returned to Matthews Drive to clean her home and to gather her belongings. While she was there, she saw Whipple slowly driving down Matthews Drive in the same gray van with Clark and Long.

### The Interstate 75 Shooting

[*P6] Two weeks later, on March 17, 2009, Alisha Kloth rented a silver Dodge Caliber for Whipple—the father of her young child—at  his request.

[*P7] Later that night, a fight broke out at the Garage Bar. Security guards intervened and herded several individuals outside the bar, including Scott Neblett. Across the street, in a Cracker Barrel restaurant parking lot, Neblett exchanged heated words with Long's cousin Trenton Evans. The altercation ended when Evans brandished a firearm. Evans then left the parking lot and walked to an adjacent Thortons[sic] gas station.

[*P8] Meanwhile, standing outside the bar, Derreyl Anderson saw Whipple, Clark, and Long with Jackie Thomas in a silver Dodge Caliber rolling through the entrance to the Cracker Barrel parking lot. Anderson also saw Neblett and another man walking toward a red TrailBlazer.

[*P9] When Evans arrived at Thortons, he saw Whipple, Clark, and Long with Thomas sitting in a silver Dodge Caliber. As he approached the four men, he heard them talking about his altercation with Neblett, who soon walked inside the gas station.

[*P10] Shortly thereafter, Anderson noticed the Caliber that he had seen Whipple driving earlier following the TrailBlazer that he had observed Neblett approach. Around the same time, William Gray was driving to work on southbound Interstate 75 when he saw a silver Dodge Caliber and a red Chevrolet Blazer racing up the on-ramp from Sharon Road. Both vehicles cut in front of his pickup truck. The Caliber darted back into the right lane, and the Blazer remained in the left lane. Gray then saw muzzle flashes on the driver's side of the Caliber and heard multiple gunshots. The Caliber sped off the highway at the Glendale Milford Road exit while the Blazer spun out of control, hit a guardrail, and rolled over several times. Police later found Neblett and Keith Cobb dead in the Blazer, along with several casings shot from three high-caliber weapons.

[*P11] Later that morning, police discovered the Caliber that Kloth had rented for Whipple abandoned in Lincoln Heights riddled with bullet holes. The Caliber also contained hospital discharge papers indicating that Whipple had sustained a gunshot wound to his hand.

[*P12] A ballistics expert testified that he had analyzed the casings found at both crime scenes, and had concluded that two of the weapons used in the Interstate 75 shooting were also used in the Matthews Drive shooting. The expert could not rule out that the third weapon used in each shooting was the same one.

*State v. Whipple*, 2012-Ohio-2938, 2012 Ohio App. LEXIS 2615 (1st Dist. June 29, 2012). Following the briefing on the appeal, the court of appeals affirmed Whipple's conviction and sentence. *Id.*  The Ohio Supreme Court declined jurisdiction over a subsequent appeal. *State v. Whipple,* 133 Ohio St. 3d 1413 (2012).

## Analysis

**Ground One:  Improper Joinder**

In his First Ground for Relief, Whipple asserts his constitutional rights were violated when the trial court refused to sever multiple counts.

Respondent asserts this Ground for Relief is procedurally defaulted because it was not fairly presented to the Ohio courts as a federal constitutional violation (Return of Writ, Doc. No. 5, PageID 38-44).  Whipple responds that he did cite the relevant provision of the United States Constitution on direct appeal (Traverse, Doc. No. 12, PageID 3095-96).[1]  In the Table of Contents, Petitioner's counsel[2] phrased the relevant claims as follows:

> FIRST ASSIGNMENT OF ERROR: The trial court erred to the prejudice of the Defendant-Appellant by granting the State's motion to join all charges and counts in one trial. Evid. R. 404, Crim. R. 8, 14 and 52, U.S. Const. Amend. V, VI, XIV, OH Const. Art. I, Sec. 10, 16.

(Appellant's Brief, Return of Writ, Doc. No. 5-1, PageID 118.)  In the body of the brief, Whipple relies on Ohio R. Evid. 404(B) which generally prohibits "other bad acts" evidence. *Id.*  at PageID 125-26.  He argues the two offenses were joined to impugn Whipple's character (by portraying him "as a thug with a gun"), but also that "[t]he charges were not separate and distinct so that the jury could separate them." *Id.*  at PageID 126.  He cites no federal case law and does

---

[1] However, Petitioner's counsel fails to provide the Court with a citation to the place where, in the 174 page state court record, the citation appears.

[2] Petitioner was represented on direct appeal by the same attorney who represents him in this Court, Sarah M. Schregardus.

not even make an argument in terms of due process or fair trial.

Respondent's lack of fair presentation claim relies on *Blackmon v. Booker*, 394 F.3d 399

(6th Cir. 2004).  In that case, the Sixth Circuit reversed a finding of fair presentation and ordered

the habeas petition dismissed.  It set the following standard for determining a fair presentation

claim:

> In determining whether a petitioner has fairly presented a federal
> constitutional claim to the state courts, a habeas court may
> consider whether
>
> (1) the petitioner phrased the federal claim in terms of the pertinent
> constitutional law or in terms sufficiently particular to allege a
> denial of the specific constitutional right in question; (2) the
> petitioner relied upon federal cases employing the constitutional
> analysis in question; (3) the petitionerrelied upon state cases
> employing the federal constitutional analysis in question; or (4) the
> petitioner alleged facts well within the mainstream of the pertinent
> constitutional law. *See Hicks v. Straub*, 377 F.3d 538, 553 (6th Cir.
> 2004) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.
> 2000)). A petitioner need not cite "chapter and verse" of
> constitutional law, *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir.
> 1987), but "general allegations of the denial of rights to a 'fair trial'
> and 'due process' do not 'fairly present claims' that specific
> constitutional rights were violated." *McMeans*, 228 F.3d at 681
> (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (6th Cir.
> 1984)).
>
> Blackmon's only citations to federal authority in his state briefs
> were (1) claims in his brief headings and conclusions that
> admission-of-evidence errors and prosecutorial misconduct
> violated his rights to a fair trial and due process, and (2) secondary
> citations to federal cases to support his state-based evidentiary
> and misconduct claims. He did not cite federal case law identifying
> how errors such as those at his trial constitute denials of "fair trial"
> and "due process" rights, nor how his case mirrored cases in which
> such denials have been found. Concomitantly, he failed to develop
> any cogent arguments regarding those rights beyond the naked
> assertion that they were violated. Such presentation is insufficient.
> *See Hicks*, 377 F.3d at 553 (holding that a petitioner merely
> arguing that the prosecutor's opening statement amounted to
> "arguing facts not in evidence" violated his constitutional right to a
> fair trial failed to fairly present a constitutional confrontation

> clause claim to the state courts); *McMeans*, 228 F.3d at 681 (citing
> *Petrucelli*, 735 F.2d at 688-89) (noting that general allegations of
> the denial of rights to a "fair trial" and "due process" do not fairly
> present claims that specific constitutional rights were violated). To
> escape procedural default, claims that the rights to due process and
> to a fair trial have been violated must of themselves be fairly
> presented, rather than functioning as catchall language appearing
> within the presentation of other non-constitutional arguments.

*Blackmon*, 394 F.3d at 400-401.

Instead of attempting to bring this case within one of the four classes for fair presentation

approved in *McMeans v. Brigano, supra,* and reaffirmed in *Blackmon*, Whipple relies on *Barrett*

*v. Acevedo*, 169 F.3d 1155 (8th Cir. 1999), for the proposition that "[s]everal other courts have

found that a citation to the exact U.S. Constitutional provision [is] sufficient to meet the

presentation requirement." (Traverse, Doc. No. 12, PageID 3096.)  The *Barrett* court decided

nothing of the kind.  As to the fair presentation question, it held:

> Although we are inclined to believe that Barrett's claim was not so
> "fairly presented" to the state court, and thus is procedurally
> defaulted, we need not decide the difficult question of whether
> Barrett's various state court filings would meet our standards.
> Since we find Barrett cannot prevail on the merits, we see no
> reason to belabor this issue. Although the procedural bar issue
> should ordinarily be resolved first, judicial economy sometimes
> dictates reaching the merits if the merits are easily resolvable
> against a petitioner while the procedural bar issues are
> complicated. *See Lambrix v. Singletary,* 520 U.S. 518, 117 S. Ct.
> 1517, 1523, 137 L. Ed. 2d 771 (1997); *Chambers v. Bowersox,* 157
> F.3d 560, 564 n.4 (8th Cir. 1998) ("The simplest way to decide a
> case is often the best.").

*Barrett*, 169 F.3d at 1162.  The Eighth Circuit went on to reverse the district court's grant of

habeas relief on the merits.

*Blackmon* is the controlling published authority in this Circuit which we would be

obliged to follow even if *Barrett* were to the contrary, which it is not.  In the First District Court

of Appeals, counsel did less to fairly present a constitutional claim than counsel did in *Blackmon*.
Therefore the First Ground for Relief is procedurally defaulted for lack of fair presentation and
should be dismissed with prejudice.

Alternatively, the First Ground for Relief is without merit.  When a state court decides on
the merits a federal constitutional claim later presented to a federal habeas court, the federal
court must defer to the state court decision unless that decision is contrary to or an objectively
unreasonable application of clearly established precedent of the United States Supreme Court.
28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown
v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams
(Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  If the First Assignment of Error were to be read as
presenting a federal constitutional claim, then this Court would have to decide if the First
District's decision met the § 2254(d)(1) standard.

The First District decided the First Assignment of Error as follows:

**Joinder**

 [*P13]  In his first assignment of error, Whipple argues that the
trial court erred in granting the state's motion to join the counts
concerning both shootings for one trial. No such motion, however,
appears in the record. Instead, the state charged Whipple in
connection with each shooting under one indictment. Nevertheless,
Whipple moved to sever the counts with respect to each shooting.
We shall, therefore, consider whether the trial court erred in
denying this motion.

 [*P14]  The state may charge two or more offenses in the same
indictment where they "are of the same or similar character, or are
based on the same act or transaction, or are based on two or more
acts or transactions connected together or constituting parts of a
common scheme or plan, or are part of a course of criminal
conduct." Crim.R. 8(A). "Joinder is the rule rather than the
exception, and it is favored by the law." *State v. Howard*, 1st Dist.
No. C-100240, 2011 Ohio 2862, ¶ 15, citing *State v. Franklin*, 62

Ohio St.3d 118, 122, 80 N.E.2d 1 (1991). But where "it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment * * * the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires." Crim.R. 14. "The defendant, however, bears the burden of proving prejudice and of proving that the trial court abused its discretion in denying severance." *State v. Torres*, 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus. The state may rebut a defendant's claim of prejudice by showing either that (1) the evidence of the joined offenses would be admissible in separate trials as "other acts" under Evid.R. 404(B), or (2) the "evidence of each crime joined at trial is simple and direct." *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990).

 **[\*P15]** Whipple maintains that by not severing the counts regarding the Matthews Drive shooting from the counts regarding the Interstate 75 shooting, the state impermissibly attempted "to show his character as a thug with a gun and prove he acted in conformity therewith." Appellant's Brief at 5.

 **[\*P16]** The Ohio Supreme Court, however, has held that joinder of counts concerning a murder and an assault was proper where the crimes were committed three days apart in the same city with the same weapon. *State v. Williams*, 73 Ohio St.3d 153, 158, 1995 Ohio 275, 652 N.E.2d 721 (1995). The court concluded that evidence tending to show that the same gun was used in both crimes was pertinent to the issue of identity under Evid.R. 404(B). *Id. Accord State v. Martin*, 151 Ohio App.3d 605, 2003 Ohio 735, 784 N.E.2d 1237, ¶ 44 (3d Dist.) (holding that joinder of aggravated-menacing and aggravated-murder counts was proper where the offenses were committed five months apart and witnesses connected the defendant to either purchasing or possessing the weapon used in each incident).

 **[\*P17]** In this case, both shootings were of the same or similar character and were part of a course of criminal conduct. They occurred within two weeks of each other and within a few miles of the Garage Bar. In addition, witnesses placed Whipple in the immediate vicinity of the victims shortly before each shooting. Thus, evidence tending to show that they were committed with the same weapons helped to identify Whipple as the perpetrator of both crimes. Moreover, the evidence presented with respect to each shooting was simple and direct "such that the jury was capable of segregating the proof on each charge." *Id*. at ¶ 45, citing *State v. Roberts*, 62 Ohio St.2d 170, 175, 405 N.E.2d 247 (1980).

[*P18]  We, therefore, hold that the [sic] Whipple was not prejudiced by the joinder of these counts in the indictment, and that the trial court did not abuse its discretion in denying his motion to sever. The first assignment of error is overruled.

*State v. Whipple, supra.*

In arguing the federal standard on joinder, Whipple relies on Magistrate Judge Norah McCann King's decision in *Allen v. Warden, Toledo Correctional Institution*, 2012 U.S. Dist. LEXIS 174791 (S.D. Ohio Dec. 7, 2012).  Judge King reiterated that proper joinder is "generally a question of state law" and becomes a federal question only if the joinder denied a petitioner a fundamentally fair trial in denial of the right to due process.  *Id.*  at *100, citing *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988).  At issue in *Allen* was a joinder of defendants claim and Judge King denied habeas relief.

Of course, habeas relief can only be granted if a petitioner shows a violation of clearly established federal constitutional law as interpreted by the Supreme Court.  28 U.S.C. § 2254(a).  Petitioner here has cited no Supreme Court precedent allegedly violated by the Ohio courts.  Applying the standard from *Allen* and the cases it cites, this Court concludes the First District's decision is neither contrary to nor an objectively unreasonable application of Supreme Court precedent.  As the First District found, the two incidents were temporally closely connected but conceptually and spatially separate.   The modus operandi was similar and perhaps most importantly from an Evidence Rule 404(B) perspective, the evidence tended to show the same weapon was used.

The law generally favors joinder.  Whipple has not shown any deprivation of due process in the joinder in this case.  The First Ground for Relief should be dismissed with prejudice.

12

**Ground Two:  Insufficient Evidence**

In his Second Ground for Relief, Whipple asserts he was convicted on insufficient evidence and the First District's conclusion denying the claim is contrary to and an unreasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979)(Traverse, Doc. No. 12, PageID 3097). The First District decided the relevant assignments of error[3] as follows:

> **Weight and Sufficiency of the Evidence**
>
> **[\*P19]**  In his second and third assignments of error, Whipple argues that his convictions were not supported by sufficient evidence and were contrary to the manifest weight of the evidence, respectively. We are not persuaded.
>
> **[\*P20]**  To reverse a conviction for insufficient evidence, we must determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. By contrast, when reviewing the weight of the evidence, we act as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997). We review the entire record, weigh the evidence, consider the credibility of witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty." *Id.*
>
> **[\*P21]**  To support these assignments of error, Whipple contends that no witness actually saw him commiteither shooting. This argument is unavailing, however, given the overwhelming circumstantial evidence implicating Whipple in both incidents. *See, e.g., Jenks* at paragraph one of the syllabus  "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.").

---

[3] Whipple does not present a manifest weight of the evidence ground for relief, presumably because that claim is not a cognizable constitutional claim.

[*P22]  Keeling, Stinson, and Maxberry testified that they had seen Whipple, Clark, and Long following them in a gray van immediately before the Matthews Drive shooting. Keeling indicated that he had felt concerned when he saw the three men due to an incident that had occurred a few days earlier at a local nightclub. Moments after Keeling and Stinson hurried inside their home with Maxberry, bullets burst through the front walls. Keeling was shot in the back and neck, Maxberry was shot in the face, and Stinson was nearly shot while ducking for cover. According to a ballistics expert, casings found at the scene were shot from three high-caliber weapons.

[*P23]  In addition, Kloth admitted that she had rented Whipple a silver Dodge Caliber the afternoon before the Interstate 75 shooting. Witnesses placed Whipple, Clark, and Long with Thomas in a silver DodgeCaliber in the early hours of the next day in the immediate vicinity of Neblett. Anderson testified that he had noticed the Caliber following a red TrailBlazer that he had earlier seen Neblett approach. Shortly thereafter, Gray saw occupants of a silver Dodge Caliber shoot the occupants of a red Chevrolet Blazer nearby on Interstate 75. Police found Neblett and Cobb dead inside the Blazer along with casings shot from three high-caliber weapons. Later that morning, police discovered the Caliber that Kloth had rented for Whipple abandoned in Lincoln Heights riddled with bullet holes, The ballistics expert testified that according to his analysis of casings found at each shooting, two of the weapons used in the Interstate 75 shooting were also used in the Matthews Drive shooting. He could not rule out that the third weapon involved in each incident was the same.

[*P24]  On this record, we hold that a rational trier of fact could have found the essential elements of each offense proven beyond a reasonable doubt, and that the jury did not clearly lose its way and create a manifest miscarriage of justice in finding Whipple guilty of each offense. The second and third assignments of error are overruled.

*State v. Whipple, supra.*

Whipple argues the evidence is insufficient because "the State failed to produce a single witness who could identify the perpetrators of either the Matthews Street shooting or the I-75 shooting."  (Traverse, Doc. No. 12.)  The First District's opinion concedes that there was no on-

scene eyewitness to the actual shootings, but relied on "overwhelming circumstantial evidence." *Whipple, supra,* at ¶ 21. Whipple also argues there are "serious credibility problems" with the witnesses who did testify.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Whipple's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in

15

all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*).

The First District's decision is neither contrary to nor an objectively unreasonable

16

application of *Jackson*.  There was evidence from multiple witnesses, including the ballistics evidence, from which a rational trier of fact could conclude Whipple committed these crimes. The Constitution does not require direct evidence; circumstantial evidence can establish guilt beyond a reasonable doubt.  And the credibility of witnesses is for the jury to decide.  The Second Ground for Relief should be dismissed with prejudice.


**Ground Three:  Improper Impeachment of State's Witness**


Whipple has withdrawn Ground Three (Traverse, Doc. No. 12, PageID 3094).


**Ground Four:  Exclusion of Defense Evidence of Police Misconduct**


In his Fourth Ground for Relief, Whipple asserts that the trial court improperly excluded defense evidence of police misconduct.  The First District decided the relevant assignment of error, Whipple's fifth, as follows:

> **Alleged Police Misconduct**
>
> [*P27]  In his fifth assignment of error, Whipple argues that the trial court erred in excluding evidence of alleged police misconduct. The trial court specifically prevented him from questioning Sergeant LaRoy Smith of the Lincoln Heights Police Department about Sandra Stevenson, a former Lincoln Heights sergeant, who had investigated Whipple before leaving the department.
>
> [*P28]  Whipple relies exclusively on *Bullcoming v. New Mexico*, 564 U.S. __, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). In that case, the defendant was arrested for driving while intoxicated. At trial, the state introduced a laboratory report certifying that the defendant's blood-alcohol concentration was above the threshold to support the offense. The analyst who signed the certification was

later placed on unpaid leave, and was not called as a witness. Instead, the state called another analyst who was familiar with the laboratory's testing procedures, but had neither participated in nor observed the test on the defendant's blood sample. *Id.* at 2709-2710.

 **[\*P29]** The United States Supreme Court held that the admission of the laboratory report had deprived the defendant of his right to confront a witness against him under the Sixth Amendment to the United States Constitution. *Id.* at 2713. *See Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 174 L. Ed. 2d 314, 557 U.S. 305 (2009) (holding that a forensic laboratory report stating that a suspect substance was cocaine ranked as testimonial for purposes of the Confrontation Clause); *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."). The court observed that had the certifying analyst been called to testify, the defendant "could have asked questions designed to reveal whether incompetence, evasiveness, or dishonesty accounted for [the analyst's] removal from his workstation." *Bullcoming* at 2715.

 **[\*P30]** Latching onto this remark, Whipple argues that the trial court should have allowed him to examine Smith about why Stevenson had left the Lincoln Heights police department. We disagree. The case at bar does not implicate *Bullcoming* because no testimonial statements by Stevenson were introduced at trial. Thus, she was not a witness Whipple had the right to confront. *Compare Bullcoming* at 2716. Furthermore, even if testimonial statements by Stevenson had been introduced, *Bullcoming* would not have given Whipple the right to cross-examine Smith about those statements. Indeed we know of no authority standing for that proposition. The fifth assignment of error is overruled.

*State v. Whipple, supra.*

Respondent objects that Whipple's Fourth Ground for Relief does not state a claim upon which relief can be granted because it does not plead any facts. That is, it does not state what defense evidence of police misconduct was excluded.

In his Brief on direct appeal, Whipple stated the claim in terms of "the trial court excluded evidence of State misconduct." The context was the cross-examination of State's

18

witness Police Sergeant Smith. He testified that a Sergeant Sandra Stevenson was "primarily involved" in the investigation and that she had resigned from the Lincoln Heights Police Department. Defense counsel asked why she resigned and the trial judge sustained a relevance objection (Trial Tr., Doc. No. 6-7, PageID 1486-88). Defense counsel represented that Sergeant Stevenson resigned "because that was the only option of either being fired or resigning, and she didn't want to lose her pension." *Id.* On appeal Whipple asserted "[t]he fact that a primary investigator in this serious crime left amidst allegations of dishonesty and theft is absolutely relevant to this case." (Appellant's Brief, Return of Writ, Doc. No. 5-1, PageID 132.) The only authority cited was *Bullcoming v. New Mexico*, 564 U.S. ___, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011). *Id.*

Whipple now argues the First District missed the whole point, that *Bullcoming* was cited for its dictum on relevance, not its holding on the Confrontation Clause (Traverse, Doc. No. 12, PageID 3098). The Fifth Assignment was not about the Confrontation Clause, he says, but about Whipple's right to present a complete defense under *Chambers v. Mississippi*, 410 U.S. 284 (1973), a case **not** cited to the First District.

In *Bullcoming*, the report of a lab analyst was introduced without the analyst himself testifying and the Supreme Court, in support of its Confrontation Clause analysis, noted that "had the lab analyst testified, the defense could have inquired as to the circumstances of his being put on unpaid leave." (Traverse, Doc. No. 12, PageID 3100, citing *Bullcoming*, 131 S. Ct. at 2715-16.) The same thing is true here. If former Sergeant Stevenson had testified and if her resignation had something to do with misconduct in her investigation in this case, then that certainly would have been fair game on cross-examination, both from a Confrontation Clause perspective and as a matter of proper impeachment.

Former Sergeant Stevenson did not testify nor were any out-of-court testimonial statements by her introduced into evidence, so there is plainly no Confrontation Clause issue here.  But Whipple has also not presented a meritorious *Chambers* issue either.  He has not shown that the actual testifying witness, Sergeant Smith, had any admissible evidence about why Sergeant Stevenson resigned or whether the resignation had anything to do with this case. Whipple's counsel made no proffer of what Smith would have said if he had been permitted to answer nor any offer to show how it would have been relevant.

A fair opportunity to present a defense in a criminal case is a constitutional right.  *Baze v. Parker,* 371 F.3d 310, 323 (6th Cir. 2004), *citing Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Presenting relevant evidence is integral to that right.  *Taylor v. Illinois*, 484 U.S. 400, 409-11 (1988).  Few rights are more fundamental than that of an accused to present witnesses in his own defense.  *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973)(citations omitted).  However, a defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.  *Id.*  Judges have a wide discretion to exclude evidence which is only marginal.  *Crane*, 476 U.S. at 690. The right to present relevant evidence is not unlimited, but subject to reasonable restrictions.  *United States v. Scheffer*, 523 U.S. 303, 308 (1998), and may bow to accommodate other legitimate interests in the criminal trial process.  *Rock v. Arkansas*, 483 U.S. 44, 55 (1987). The right to present a complete defense means that any state evidentiary rules used to exclude evidence cannot be "arbitrary" or "disproportionate to the purpose they are designed to serve." *Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir.  2010), *quoting Scheffer*, 523 U.S. at  308.

Whipple did not submit a persuasive relevance argument to either the First District or in his Traverse here.  Nor has he shown how, even if former Sergeant Stevenson's misconduct was

20

relevant, how he could have had Sergeant Smith testify about it.  The First District's decision is neither contrary to nor an unreasonable application of *Chambers*.  Therefore the Fourth Ground for Relief should be dismissed with prejudice.

**Ground Five:  Admission of Unauthenticated Evidence**

Whipple has withdrawn his Fifth Ground for Relief (Traverse, Doc. No. 12, PageID 3094).

**Ground Six:  Refusal to Declare a Mistrial**

Whipple has withdrawn his Sixth Ground for Relief (Traverse, Doc. No. 12, PageID 3094).

**Ground Seven:  Double Jeopardy**

In his Seventh Ground for Relief, Whipple claims the State violated his Double Jeopardy rights when it failed to merge his convictions for improper discharge of a firearm into a habitation and felonious assault.

Respondent argues this claim is procedurally defaulted by Whipple's failure to present it to the state courts as a federal constitutional claim (Return of Writ, Doc. No. 5, PageID 44). Petitioner's sole response to that argument is the one he made on the First Ground for Relief (Traverse, Doc. No. 12, PageID 3095).  In his Brief on direct appeal, Whipple merely mentions the Fifth and Fourteenth Amendments; he neither cites any federal law nor even mentions the

Double Jeopardy Clause.  His entire argument is based on *State v. Johnson*, 128 Ohio St. 3d 153

(2010)(Return of Writ, Doc. No. 5-1, PageID 134).  He asserts that because the same evidence

was used to prove both offenses, they must be merged under Ohio Revised Code § 2941.25. *Id.*

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution

affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after
> acquittal.  It protects against a second prosecution for the same
> offense after conviction.  And it protects against multiple
> punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717

(1969).  The Double Jeopardy Clause was held to be applicable to the States through the

Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes

is "whether each offense contains an element not contained in the other."  *United States v. Dixon*,

509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Where two

offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the

legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981);

*Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and

*Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th

Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense

provided the legislature has clearly indicated its intent to so provide, and recognizes no exception

for necessarily included, or overlapping offenses.")  The *Blockburger* test is a rule of statutory

construction, not a constitutional test in itself.  *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing*

*Albernaz*.  "When assessing the intent of a state legislature, a federal court is bound by a state

court's construction of that state's own statutes."  *Volpe,* 708 F.3d at 697, *citing Banner v. Davis*,

886 F.2d 777, 780 (6th Cir. 1989).

Whipple argues that the Ohio General Assembly enacted Ohio Revised Code § 2941.25 "to codify the Double Jeopardy Clause." The Ohio Supreme Court has actually held § "2941.25 is a prophylactic statute that protects a criminal defendant's rights under the Double Jeopardy Clauses of the United States and Ohio Constitutions." *State v. Johnson*, 2010-Ohio-6314 at ¶ 45, 128 Ohio St. 3d 153, 162 (2010). The Court concludes Whipple adequately preserved his Double Jeopardy claim in this case by arguing it in terms of *State v. Johnson*. See *Jackson v. Smith,* 745 F.3d 206 (6th Cir. 2014).

In denying the merger claim, the First District held:

### Merger

[*P35] In his eighth assignment of error, Whipple argues that the trial court erred in convicting him of both improperly discharging a firearm and the three counts of felonious assault in connection with the Matthews Drive shooting. We are not persuaded.

[*P36] Under R.C. 2941.25, a trial court may, in a single proceeding, sentence a defendant for two or more offenses "having as their genesis the same criminal conduct or transaction," if the offenses (1) are not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *See State v. Bickerstaff*, 10 Ohio St.3d 62, 65-66, 10 Ohio B. 352, 461 N.E.2d 892 (1984), quoting *State v. Moss*, 69 Ohio St.2d 515, 519, 433 N.E.2d 181 (1982). "A criminal defendant has the burden of establishing his entitlement to merger of offenses pursuant to the allied-offense statute." *State v. Wesseling*, 1st Dist. No. C-110193, 2011 Ohio 5882, citing *State v. Mughni*, 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987). Indeed, there is no presumption that offenses merge, as each case must be individually considered "given that the statute instructs courts to examine a defendant's conduct—an inherently subjective determination." *State v. Johnson*, 128 Ohio St.3d 153, 2010 Ohio 6314, 942 N.E.2d 699, ¶ 52.

[*P37] Whipple fails to show that he is entitled to merger under R.C. 2941.25 because the record demonstrates that he committed each crime at issue with a separate animus. "The Ohio Supreme

Court interprets the term 'animus' to mean 'purpose or, more properly, immediate motive,' and infers animus from surrounding circumstances." *State v. Shields*, 1st Dist. No. C-100362, 2011 Ohio 1912, ¶ 16, citing *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). The court has explained that where "an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, *a priori*, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime." *Logan* at 131.

 [*P38]  Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. *Id*. at 131. Thus, the manner in which a defendant engages in a course of conduct may indicate distinct purposes. *See, e.g., State v. Tibbs*, 1st Dist. No. C-100378, 2011 Ohio 6716, ¶ 43-48 (the manner of killing demonstrated a distinct animus to kill the victim separate from the immediate motive to rob him); *State v. Rogers*, 8th Dist. Nos. 97093 and 97094, 2012 Ohio 2496, ¶ 32 (length of time spent in the victim's vehicle indicated a separate animus for the initial break-in and the subsequent theft of items from the vehicle); *State v. Jackson*, 2d Dist. No. 24430, 2012 Ohio 2335, ¶ 140 (where the force used to effectuate an aggravated robbery is far in excess of that required to complete the robbery, there is no merger); *Logan* at syllabus (where the manner in which a kidnapping is conducted demonstrates "a significance independent of the other offense," there exists a separate animus). Courts should consider whether facts appear in the record that "distinguish the circumstances or draw a line of distinction that enables a trier of fact to reasonably conclude separate and distinct crimes were committed." *State v. Glenn*, 8th Dist. No. 94425, 2012 Ohio 1530, ¶ 9 (citations omitted).

 [*P39]  This "line of distinction" can be drawn either horizontally or vertically. A court makes this horizontal line of distinction when it considers the amount of time between the commissions of the offenses (i.e. the amount of time during which the conduct occurred is such that a separate animus is demonstrated as to each charged offense). On the other hand, a vertical line of distinction is made when considering the severity of the conduct (i.e. the conduct so exceeds the degree required to commit the one offense that a separate animus is demonstrated as to a second offense). This case falls within the second class.

 [*P40]  Police recovered 28 shell casings from the crime scene. The casings were found in the street spread across the length of the

24

property, on the sidewalk, in the driveway, in the yard, on the porch, and three were found actually inside the home. Most of the windows of the van the victims had been riding in, which was parked on the street, had also been shot out. The investigating officer testified that "there were casings everywhere. The house had been shot up." Based on where the casings were found, the shooters had been in the street and had advanced through the yard and onto the porch. Keyonni Stinson testified that she had heard footsteps on the porch during the shooting, and that afterward the house had been filled with smoke and dust. The testimony and photographic evidence demonstrated that Whipple and his confederates had gone on a shooting rampage at this Lincoln Heights home, shooting through vehicles, doors, windows, and walls.

 [*P41]  In this way, this case is distinguishable from cases like *State v. Walton*, 5th Dist. No. 2011 CA 00214, 2012 Ohio 2597. In that case, the defendant stood outside the front door and fired five shots into the door, one of which killed the victim. He was charged with felony murder, with the predicate offense being discharging a firearm into a habitation. The court found that the two offenses were subject to merger, concluding that the two charges were "inextricably part of the same conduct," but noted that their conclusion "would not necessarily apply to every conceivable scenario of a killing from a drive-by shooting into a house." *Id*. at ¶ 56.

 [*P42]  This case presents such a scenario. The level of destruction unleashed by Whipple upon the home demonstrates that he sought to do more than commit felonious assault. Whipple has, therefore, not met the burden of establishing that he is entitled to merger. Accordingly, the eighth assignment of error is overruled.

*State v. Whipple, supra.*

In essence the First District determined that, given the amount of shooting that occurred, Whipple acted with a separate animus as to the felonious assault and discharge into a habitation charges.  In arguing this claim in the Traverse, Whipple emphasizes *State v. Johnson, supra.*  But Whipple fails to acknowledge that this Court is bound by the First District's interpretation of Ohio Revised Code § 2941.25 and *Johnson*. That is to say, the First District determined that the

General Assembly intended to permit cumulative punishment for these four offenses in a situation where the offender acted with separate animus as to the different offenses and that Whipple had so acted in this case.  Determination of animus is a question of fact and Whipple has not shown this determination of fact is unreasonable in light of the evidence in the state court record that the First District relied on.

The Seventh Ground for Relief should therefore be dismissed with prejudice.

**Ground Eight:  Ineffective Assistance of Trial Counsel**

In his Eighth Ground for Relief, Whipple asserts he received ineffective assistance of trial counsel when trial counsel failed to timely object when the State improperly questioned Alicia Kloth and failed to timely move for a separate trial from Petitioner's co-defendants.

This was Whipple's Ninth Assignment of Error on direct appeal which the First District decided as follows:

> ### Ineffective Assistance of Counsel
>
> **[*P43]**  In his ninth assignment of error, Whipple argues that he received ineffective assistance of counsel. We are not persuaded.
>
> **[*P44]**  To prevail on a claim of ineffective assistance of counsel, an appellant must show that trial counsel's performance was deficient, and that the outcome of the proceedings would have been different but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reviewing court will not second-guess trial strategy and must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *State v. Finley*, 1st Dist. No. C-061052, 2010 Ohio 5203, ¶ 44, citing *State v. Mason*, 82 Ohio St.3d 144, 157-158, 1998 Ohio 370, 694 N.E.2d 932 (1998).

> **[\*P45]** Whipple argues that his trial counsel's performance was deficient because she did not immediately object to the questioning of Kloth about her prior inconsistent statement and did not move for a separate trial from Clark and Long. We cannot, however, say that her performance was a deficiency "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland* at 687. The ninth assignment of error is overruled.

*State v. Whipple, supra.* Although summary, this decision is plainly on the merits and entitled to deference under 28 U.S.C. § 2254(d)(1). *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011).

As Whipple acknowledges, an ineffective assistance of trial counsel claim must show both deficient performance by trial counsel and prejudice, i.e., a reasonable probability of a different result. *Strickland*, 466 U.S. at 694.

Regarding any prejudice as a possible result of allowing the impeachment of Kloth, this issue was preserved for appeal and the First District held that any error in allowing the impeachment was harmless. *State v. Whipple, supra*, ¶¶ 25-26. Whipple now argues that, had counsel objected, "the issue would have prevailed or at a minimum, have been properly preserved for appeal." (Traverse, Doc. No. 12, PageID 3105.) But the issue was properly preserved for appeal and decided on the merits by the First District. Whipple offers no argument on the Kloth testimony to show that the First District's finding of harmless error was an unreasonable application of Supreme Court precedent, to wit, *Brecht v. Abrahamson*, 507 U.S. 619 (1993). If allowing the impeachment was harmless error, it cannot have been prejudicial within the meaning of *Strickland*.

Whipple's other ineffective assistance of trial counsel sub-claim relates to failure to move

for severance of Whipple's trial from that of his co-defendants.[4]  On this sub-claim he merely

asserts that the motion to sever should have been made well before it was actually made at the

outset of trial.  He offers no explanation of why this was deficient performance or how he was

prejudiced.  Instead, he asserts in conclusory fashion "[t]here is a reasonable likelihood that had

defense counsel done so, the trial court would have granted the motion. . . ." (Traverse, Doc. No.

12, PageID 3106.)  In the Return of Writ, Respondent argues ways in which it could have been a

reasonable tactical decision to have all three defendants in the dock at the same time so as to

spread responsibility and multiply the counsel who could make objections (Return, Doc. No. 5,

PageID 77-78).   Whipple has neither shown this would have been an unreasonable tactical

decision nor any way in which Whipple was prejudiced by the joint trial.  Therefore the First

District's rejection of the ineffective assistance of trial counsel claim is not an unreasonable

application of *Strickland*.  The Eighth Ground for Relief should be dismissed with prejudice.


**Ground Nine:  Denial of Due Process by Page Limitation on Appeal**


        In his Ninth Ground for Relief, Whipple asserts he was deprived of his Fifth, Sixth, and

Fourteenth Amendment rights when the First District refused to remove his case from their

accelerated calendar which meant he was limited to fifteen pages in his principal brief and

allowed no reply brief at all.

        Whipple notes that the denial of his request for removal from the accelerated calendar is

not in the record before this Court but can be found at a listed website.  Visit to that website

shows that there was a motion to remove from the accelerated calendar on November 22, 2011,

---

[4] This is an entirely different issue from the severance question in the First Ground.

and an entry overruling that motion on December 13, 2011.  Review of that motion shows that it made no constitutional argument whatsoever.  Thus this Ground for Relief is procedurally defaulted by Whipple's failure to present it to the Ohio courts.

Respondent asserts this is only a matter of state law and not cognizable in federal habeas corpus (Return, Doc. No. 5, PageID 78-79).  Whipple responds that the Sixth Circuit has considered similar issues (Traverse, Doc. No. 12, at PageID 3107, citing *Dorn v. Lafler*, 601 F.3d 439 (6th Cir. 2010), and *Dvorak v. Walker,* 1999 U.S. App. LEXIS 29619 (6th Cir. Nov. 4, 1999)).  In neither one of these cases does the Sixth Circuit cite any Supreme Court precedent controlling the amount of briefing on a state direct appeal.  To put it another way, the Supreme Court has never held that the constitutional right to effective assistance of counsel on direct appeal implies a right to file a brief longer than fifteen pages or a reply brief.

As it is procedurally defaulted and because it is without merit, the Ninth Ground for Relief should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

October 6, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

29

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).